In the District Court of the United States
For the District of South Carolina

### BEAUFORT DIVISION

| | | |
|---|---|---|
| **Gregory D. Benjamin, #234091,** | ) | |
| | ) | Civil Action No.  9:06-1154-TLW-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **State of South Carolina, Attorney General** | ) | **OF THE MAGISTRATE JUDGE** |
| **of the State of South Carolina, and** | ) | |
| **Warden of Lee Correctional Institution,** | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## I.    INTRODUCTION

The Petitioner, Gregory D. Benjamin ("Petitioner" or "Benjamin"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254.  By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Pursuant to the provisions of Title 28, United States Code Section 636(b)(1)(B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C., this United States Magistrate Judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner and the above-named Respondents have filed motions for summary judgment.  As these are dispositive motions, this Report and Recommendation is submitted for review by the District Court.

## II.    *PRO SE* PETITION

The Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4ᵗʰ Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4ᵗʰ Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S.

970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

     *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp.2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).  Such is the case with the present Petition.

### III.    PROCEDURAL HISTORY IN STATE COURT

During the 1995 term of court, the Orangeburg County Grand Jury indicted Benjamin for murder, armed robbery, and assault and battery with intent to kill.  (95-GS-38-217, 216, 215) The prosecution made a notice of intent to seek the death penalty pursuant to S.C. Code Ann. § 16-3-26.  Orangeburg County Public Defender Michael Culler and private appointed counsel Luther J. Battiste represented Benjamin on these charges.

After a jury trial, Benjamin was convicted of murder, armed robbery, and assault and battery with intent to kill.  On May 8, 1996, the Honorable Charles Whetstone sentenced Benjamin to life imprisonment where aggravating circumstances had been found for murder, twenty (20) years consecutive for assault and battery of a high and aggravated nature, and thirty (30) years consecutive to each sentence for the crime of armed robbery.

Benjamin did not file a direct appeal and did not file an application for post-conviction relief.[1]  A review of the pleadings and exhibits before this Court further reveal that the transcript of his May 1996 trial and sentencing is not available pursuant to SCACR Rule 607(I) since no request was made during the five (5) year retention period.

### IV.  FEDERAL COURT HISTORY

Benjamin filed a Petition for a writ of habeas corpus (the "Petition") on April 10, 2006,[2] against the above-captioned Respondents, State of South Carolina, Attorney General of the State of South Carolina, and Warden of Lee Correctional Institution[3] (collectively, the "Respondents").  [1]  Benjamin raised the following grounds for *habeas corpus* relief:

Ground One:          Denial of effective assistance of counsel.

---

[1]       *See* Petitioner's Memorandum [39] at p. 2.

[2]       In *habeas corpus* cases, the Petitioner has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.  [5]

[3]       The Petitioner currently is incarcerated in Evans Correctional Institution.

a.     Trial counsel never filed a notice of appeal from his conviction and sentence of May 8,1996.

b.     Counsel failed to advise him of his right to appeal.

Ground Two:          Denial of right to appeal.

a.     Due process and equal protection violated when notice of appeal was not made.

b.     In 2005, Petitioner recalled that one of the attorneys told the trial judge that he was going to appeal, but that the judge said "Noted."; however, no notice of appeal was ever filed.

c.     In June 2004, Petitioner began requesting his files, initially, from counselor Luther J. Battiste and then [from] counselor Michael Culler.

Ground Three:        Conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

a.     The State failed to show that Petitioner was ever in actual or constructive possession of the alleged murder weapon.

b.     A constitutionally-infirm search and seizure was conducted by the police.

c.     Witness statements did not describe Petitioner nor was an out-of-court, non-photo line-up ever conducted.

d.     Hearsay testimony about an alleged gun sale was allowed into evidence without Petitioner being allowed to confront and cross-examine the alleged non-testifying witness.

e.     Counsel failed to move to suppress the in-court identification.

Ground Four:         The conviction was obtained by the action of an improperly empaneled Grand or Petit Jury.

"During 5/8/96 or thereafter, on television news it showed my picture and someone on my jury panel was impeached and if this is true and correct, I should have had a new trial and this violated my Due Process, Equal Protection. The prosecution and my attorneys should have ordered a new trial, rather, filed for a new trial. The trial judge should have ordered a new trial."[4]

---

[4]     This issue appears to arise from the contempt conviction of one of the jurors, Patricia Kennerly.  *See State v. Kennerly*, 337 S.C. 617, 524 S.E.2d 837 (1999) (juror was held in direct contempt where  (1) Kennerly did not disclose during individual or group voir dire her relationship with either the defendant Gregory Benjamin or his sister Tina Benjamin, a defense witness; and (2) despite warnings by the Judge to the contrary, Kennerly, on repeated occasions during the guilt phase of the trial, initiated discussions about the case with other jurors.  Kennerly stated to fellow jurors she knew the defendant and his sister, Tina, and would not vote for the death penalty).

A member of the Petit jury was convicted of direct contempt of court for
concealing knowledge of her relationship with the Petitioner and/or Petitioner's
family and friends and for prematurely discussing the facts of the case prior to the
onset of official deliberations.[5]

On April 24, 2006, the undersigned issued an Order which notified Benjamin of the change of address rule and also directed the Clerk not to authorize service upon the Respondents. [4] Also on April 24, 2006 a Report and Recommendation was filed recommending dismissal of the Petition without prejudice and without issuance and service of process upon the Respondents because the Petitioner had not exhausted his state remedies. [6] Petitioner filed his objections to the Report on Recommendation on May 31, 2006 along with a motion for the appointment of counsel. [10, 11] On February 6, 2007, the Honorable Terry L. Wooten, United States District Judge for the District of South Carolina, filed an Order remanding the case back to the undersigned Magistrate Judge for further analysis of the exhaustion issue and a determination of whether the exhaustion requirement was technically met; the Order also ordered that the case be served and process issued. [12]

On February 7, 2007, the Petitioner's request for appointment of counsel was denied by the undersigned. [15] On February 15, 2007, the undersigned issued an Order which authorized service upon the Respondents and notified Benjamin of the change of address rule. [17] On February 16, 2007, the Petitioner filed an appeal of the decision to deny counsel. [18] On April 9, 2007, the Respondents moved for an extension of time in which to make a return or otherwise plead. [20] This motion was granted by the undersigned on April 10, 2007. [21] On May 7, 2007, the Respondents again moved for an extension of time in which to make a return or otherwise plead; that motion was granted on May 8, 2007. [24; 25] On June 8, 2007, the Respondents filed a Motion for Summary Judgment [29] and a Return and Memorandum of Law in Support of Motion for Summary Judgment (the "Return") and supporting exhibits. [28] The

---

[5]    *See* Petitioner's Petition [1] and the Petitioner's Memorandum [39], for the grounds set forth
in his Petition.

undersigned issued an Order filed on June 11, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Benjamin of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Respondent's Return.[6]  [30]  On July 3, 2007, Benjamin filed a Motion to extend time to respond to the motion for summary judgment which was granted by an oral order on July 9, 2007.  [31; 32]  On July 31, 2007, Benjamin filed a motion to stay and leave to conduct discovery which was denied on July 31, 2007.  [34, 35]  On August 15, 2007, Benjamin filed a motion for summary judgment and his response in opposition to the motion for summary judgment file by the Respondents.  [39, 42]  On August 29, 2007, Judge Wooten filed an Order affirming the Court's decision not to appoint counsel.  [40]  As the issues have been joined, this matter is ripe for review by the undersigned.

## V.    HABEAS CORPUS REVIEW

### A.  The Antiterrorism and Effective Death Penalty Act

The present habeas corpus petition was filed on April 10, 2006.  Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of his collateral attack on his criminal conviction is governed by the parameters set forth in the AEDPA, which amended Section 2254.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.), *cert. denied*, 521 U.S. 371, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999).

### B.  Exhaustion

A habeas petitioner generally must first exhaust his available state remedies before petitioning for federal habeas corpus relief. 28 U.S.C. § 2254 (b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest

---

[6]    The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal habeas corpus cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  As stated above, Benjamin did not file a direct appeal and he has never filed a state post-conviction relief action.

However, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture." *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).  The exhaustion requirement is also satisfied when a state procedural rule would bar consideration of the unexhausted claim if the claim were presented to the state court.  *See Matthews v. Evatt*, 105 F.3d at 911 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Because the requirement of exhaustion is not jurisdictional, a court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Welchel v. Bazzle*, 489 F.Supp.2d 523, 536 (D.S.C. 2006), *citing Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).  In order to have such claims considered, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

### 1.  Cause and Prejudice

A prisoner can demonstrate cause for procedural default by proving that he was deprived of constitutionally effective assistance of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  If counsel performs at a constitutionally acceptable level, then counsel's performance cannot constitute cause for procedural default.  *Id.* at 486-88, 106 S.Ct. 2639; *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Ineffective assistance of counsel may constitute "cause" for a procedural default under certain circumstances.  *Murray*, 477 U.S. at 488.  The procedural default doctrine and its attendant "cause and prejudice" standard are "grounded in concerns of comity and federalism," *Coleman v.*

*Thompson*, 501 U.S. at 730, 111 S.Ct. 2546 and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack, *Murray*, 477 U.S. at 490-492, 106 S.Ct. 2639. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732, 111 S.Ct. 2546. The Supreme Court therefore requires a prisoner to demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim. *Edwards v. Carpenter*, 529 U.S. at 451, *citing Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

### a. Cause

A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *See Murray v. Carrier*, 477 U.S. 478, 486-92, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Furthermore, the Supreme Court has acknowledged that in certain circumstances, counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. *Edwards*, 529 U.S. at 451, 106 S.Ct. at 1591, *citing Murray*, 477 U.S. at 488-489, 106 S.Ct. 2639. If attorney error amounts to constitutionally ineffective assistance of counsel under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),[7] it may provide the cause necessary to excuse a procedural default. *See Coleman*, 501 U.S. at 752-54, 111 S.Ct. at 2566-67; *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Thus, not just any deficiency in counsel's performance will do; the assistance must have been so ineffective as to violate the Federal Constitution. *Id.* In other words, ineffective assistance

---

[7] A defendant is deprived of the assistance of counsel guaranteed by the Constitution when counsel's performance falls "below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068.

adequate to establish cause for the procedural default of some other constitutional claim is *itself* an independent constitutional claim.  However, as the Supreme Court's opinion in *Edwards v. Carpenter* illustrates, "this second claim of ineffective assistance of counsel is itself subject to procedural bar, and if this claim was not properly raised before the state court, it cannot serve as 'cause.'"  *Longworth v. Ozmint*, 302 F.Supp.2d 535, 544 (D.S.C. 2003) (*citing Edwards*, 529 U.S. at 453, 120 S.Ct. 1587).  The Supreme Court, in its closing statement in *Edwards*, states that an exception to this procedural bar exists:  "To hold, as we do, that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."  *Edwards*, 529 U.S. at 453, 120 S.Ct. 1587 (emphasis in original).  And the Court held in *Murray* that the principles of comity and federalism require that the constitutional claim, like others, to be first raised in state court.  According to the *Murray* court, "a claim of ineffective assistance [generally must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Murray*, 477 U.S. at 489, 106 S.Ct. 2639.

### b.  Actual prejudice

Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default.  *Murray v. Carrier*, 477 U.S. at 492, 106 S.Ct. 2639.  To show actual prejudice, the petitioner must demonstrate more than plain error.  He is required to prove that specific errors infected the trial and were of constitutional dimension.  *United States v. Frady*, 456 U.S. 152, 169, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

### VI.  DISCUSSION

**Ground One:**          **Denial of effective assistance of counsel.**

       **a.**       **Trial counsel never filed a notice of appeal from his conviction and sentence of May 8,1996.**

       **b.**       **Counsel failed to advise him of his right to appeal.**

**Ground Two:**       **Denial of right to appeal.**

       **a.**       **Due process and equal protection violated when notice of appeal was not made.**

       **b.**       **In 2005, Petitioner recalled that one of the attorneys told the trial judge that he was going to appeal, but that the judge said "Noted."; however, no notice of appeal was ever filed.**

       **c.**       **In June 2004, Petitioner began requesting his files, initially, from counselor Luther J. Battiste and then [from] counselor Michael Culler.**

Benjamin's first two claims are related and thus will be discussed together. In his first ground for habeas relief, Benjamin contends that he was denied effective assistance of counsel because his attorneys failed to file a notice of appeal and failed to advise him of his right to file an appeal. In his second ground, he contends that he was "deni[ed] of right to appeal."

## A. Any available state court remedy would be barred by Section 17-27-45(C)

Under South Carolina Rules of Appellate Practice, Rule 203(b)(2), the time for serving a notice of appeal from an conviction in General Sessions Court is within ten days after the sentence, which in this case was Wednesday, May 8, 1996. In the present case, the deadline for filing a notice of appeal was Monday, May 20, 1996.[8] As mentioned above, an appeal was never filed in Benjamin's case. In *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974), the South Carolina Supreme Court held that where the PCR judge determines that the applicant did not freely and voluntarily waive his direct appellate rights, the applicant may petition the South Carolina Supreme Court for review of direct appeal issues. This procedure is set up presently

---

[8]      May 18, 1996 was a Saturday.

under SCACR Rule 227(h).[9]  A PCR application ordinarily "must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later." S.C. Code Ann. § 17-27-45(A) (2003).  In *Wilson v. State*, 348 S.C. 215, 559 S.E.2d 581 (2002), the defendant instructed his attorney to appeal his conviction and the attorney failed to do so. The defendant in *Wilson* subsequently filed a PCR application alleging ineffective assistance of counsel.  The PCR judge dismissed the defendant's claim because it was untimely under the statute of limitations.  The state Supreme Court reversed the PCR judge and remanded the case for an evidentiary hearing to determine if the defendant knowingly and intelligently waived his right to direct appeal.  *Wilson*, 348 S.C. at 218, 559 S.E.2d at 583.  The Supreme Court held that the one year statute of limitations did not apply to the claim of ineffective assistance of counsel on the failure to file a direct appeal under Section 17-27-45(A).  However, the decision in *Wilson* did not address the situation which obtains in the present case, where the Petitioner did not act diligently after learning that no appeal had been filed.

---

[9]    In pertinent part, Rule 227(i) states:

(i) Special Procedures Where a *White v. State* Review Is Sought.  Where the petition seeks review under *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974), the following procedure shall be followed:

(1) When the post-conviction relief judge has affirmatively found that the right to a direct appeal was not knowingly and intelligently waived, the petition shall contain a question raising this issue along with all other post-conviction relief issues petitioner seeks to have reviewed.  At the same time the petition is served, petitioner shall serve and file a brief addressing the direct appeal issues.  This brief shall, to the extent possible, comply with the requirements of Rule 208(b).  Respondent's return to the petition shall address the post-conviction relief issues, including whether the direct appeal was knowingly and intelligently waived.  At the same time the return is due, respondent shall also serve and file a brief addressing the direct appeal issues.  Within ten (10) days after service of respondent's brief, petitioner may file a reply brief on the direct appeal issues.

(2) When the post-conviction relief judge has found that the applicant is not entitled to a *White v. State* review, the petition shall raise the question of waiver of the right to a direct appeal along with all other post-conviction relief issues petitioner seeks to have reviewed. The petition shall also contain a "Statement of Issues on Appeal" listing the issues to be raised if a *White v. State* review is granted; this statement of issues shall comply with the requirements of Rule 208(b)(1)(B).  Briefing of the direct appeal issues will not be allowed unless certiorari is granted on the issue.

In Section 17-27-45, the PCR statute of limitations, subsection (C) sets out the following alternative language:

> (C) If the applicant contends that there is evidence of material facts not previously presented and heard that requires vacation of the conviction or sentence, the application must be filed under this chapter within one year *after the date of actual discovery of the facts* by the applicant or after the date when the facts could have been ascertained *by the exercise of reasonable diligence.*

Assuming, *arguendo*, that the Petitioner first learned of the fact that no notice of appeal had been filed on the date he received the July 18, 2005 letter from the Supreme Court of South Carolina,[10] he would have had until July 2006 to file a state PCR action.[11]  However, Benjamin did not file a PCR action within one year, and therefore any filing now would be procedurally barred under Section 17-27-45(C).

## B.  Benjamin has no excuse for procedural default

Moreover, Petitioner cannot show cause for, or prejudice from, his procedural default.  In particular, he cannot show prejudice from the default.  A close reading of the Petitioner's first and second grounds for Habeas relief indicates that the Petitioner <u>does not</u> claim that he instructed his trial attorneys to file an appeal.  Indeed, Benjamin's allegations regarding the issue of appeal are contradictory.  First, Benjamin claims "Counsel failed to advise him of his right to appeal[,]" but then states "[i]n 2005, Petitioner recalled that one of the attorneys told the trial judge that he was going to appeal, but that the judge said 'Noted.'; however, no notice of appeal was ever filed."  If Benjamin's attorneys "failed to advise him of his right to appeal", then there is no basis for the attorneys to advise the judge that an appeal would be filed on his behalf.  In

---

[10]    *See* July 19, 2005 letter attached to Petition.  [1]

[11]    This period ran after the federal habeas action was delivered.  However, this federal pleading does not toll the deadline for filing a state PCR action.  *See Green v. State*, 353 S.C. 29, 30, 576 S.E.2d 182, 183 (2003) (the filing of a federal § 2254 petition does not toll the one-year limitations period of § 17-27-45, South Carolina Code of Laws).  If the state statute of limitations began to run on July 18, 2005, it ended on July 18, 2006 when he failed to file a PCR on his allegedly known claim.  This situation under Section 17-27-45(C) is different from the matter presented in *Wilson* where the applicability of Section 17-27-45(A) was asserted.

other words, either Benjamin was not aware of the right to appeal, in which case he would not

have instructed his attorneys to appeal, or he was aware of his right to appeal, told his attorneys

to appeal, and they so advised the court.

Petitioner appears to claim, first, that his attorneys did not tell him he had a right to

appeal, trial counsel never filed a notice of appeal, and, second, that trial counsel informed the

trial judge that Petitioner was going to appeal.[12]  Of course, this recitation begs the question how

Petitioner, who was not apprised of his right to appeal, nonetheless communicated to his trial

counsel that he wanted to appeal.

Leaving that question aside, when evaluating a claim of whether counsel was

constitutionally ineffective for failing to file a notice of appeal, the familiar framework provided

by *Strickland v. Washington*[13] is used.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77, 120

S.Ct. 1029, 145 L.Ed.2d 985 (2000); *see also Frazier v. South Carolina*, 430 F.3d 696, 704-05

(4th Cir. 2005) (explaining that "*Flores-Ortega* simply crystalizes the application of *Strickland*

to the specific context of [ineffectiveness claims based on the failure to appeal]").  "To establish

a Sixth Amendment violation based upon counsel's failure to appeal, [a petitioner] must prove

that (1) counsel was ineffective and (2) a reasonable probability that, but for counsel's

ineffectiveness, an appeal would have been filed."  *United States v. Witherspoon*, 231 F.3d 923,

926 (4th Cir. 2000) (*citing Roe v. Flores-Ortega*, 528 U.S. at 477-83.

If counsel has consulted with the defendant, the failure to file an appeal is deficient only

if it contradicts the defendant's instructions to appeal.  *Flores-Ortega*, 528 U.S. at 478.  In the

absence of a direct instruction from a defendant to appeal, the question of whether counsel's

---

[12]        *See* Petitioner's Grounds One and Two.

[13]        In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), he
Supreme Court held that a defendant claiming ineffective assistance of counsel must show
(1) that counsel's representation "fell below an objective standard of reasonableness," 466
U.S. at 688, 104 S.Ct. 2052, and (2) that counsel's deficient performance prejudiced the
defendant, 466 U.S. at 694, 104 S.Ct. 2052.

failure to appeal is constitutionally deficient depends upon "whether counsel in fact consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478. If counsel has failed to consult, the court must consider whether "this failure constitutes deficient performance. In doing so, a court should consider whether "(1) . . . a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal); [and] (2) . . . [whether] this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. If the court determines that counsel's performance was deficient, the court must then determine whether the defendant was prejudiced thereby. To demonstrate prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 482.

In the present case, as demonstrated by Benjamin's own statements, the evidence does not show that he expressed any interest in appealing before June 2004,[14] nor has Benjamin set forth any nonfrivolous grounds for appeal (or any grounds for appeal whatsoever); nor has he made any allegation that he would have instructed his attorneys to appeal had they advised him that there was no basis to appeal. *See Frazier*, 430 F.3d at 708 (holding that to show prejudice under *Flores-Ortega* the defendant must demonstrate either that (1) there were nonfrivolous grounds for appeal or (2) he demonstrated to counsel an interest in appealing and had he received reasonable advice from counsel about appeal, he would have instructed counsel to file an appeal). Benjamin has failed to meet the *Flores-Ortega* test.

## C.  Benjamin is barred by the doctrine of laches

Finally, even if the court were to assume, for sake of discussion, that Benjamin was aware of his right to appeal and told his attorneys to file an appeal, Benjamin cannot escape the

---

[14]     *See* Petition [1] at p. 3:  "In June 2004, Petitioner began requesting his files, initially from counselor Luther J. Batiste and then counselor Michael Culler."

fact that he waited over 9 years[15] to enquire about his appeal. Thus, it appears that any state court action would be barred under the doctrine of laches. The doctrine of laches may bar an action such as this where there is no applicable statute of limitations. *Whitehead v. State*, 352 S.C. 215, 574 S.E.2d 200 (2002). Laches is an equitable doctrine, which "arises upon the failure to assert a known right." *Ex parte Stokes*, 256 S.C. 260, 182 S.E.2d 306 (1971). Laches is defined as neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done. *Whitehead v. State* , 352 S.C. 215, 574 S.E.2d 200 (S.C. 2002) (defense of laches may also apply when a record was destroyed pursuant to Rule 607(I), SCACR); *Oliver v. United States*, 961 F.2d 1339, 1342 (7th Cir. 1992) (petitioner's seventeen-year delay in bringing his section 2255 action prejudiced the government in its ability to respond to the merits of petitioner's allegations because of its destruction of records after ten years and the unavailability of any other means of producing transcripts of the guilty plea and sentencing).

Whether a claim is barred by laches is to be determined in light of the facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party; delay alone in assertion of a right does not constitute laches." *Hallums v. Hallums*, 296 S.C. 195, 198-199, 371 S.E.2d 525, 527 (1988); *McElrath v. State*, 276 S.C. 282, 277 S.E.2d 890 (1981). An unreasonable and unexplained length of time, under circumstances affording opportunity for diligence has been shown by the Petitioner's papers where over ten years have passed since May 1996, when he first sought to communicate with counsel on July 5, 2004 (based upon the July 20, 2004 Letter from Battiste to Benjamin included in his pleadings). Clearly, there exists a lack of diligence on the part of Petitioner. In the interim, SCACR Rule 607(I) was adopted initially in 1998, amended in 2000, 2003 and 2006, and now reads:

---

[15]     The letter to Benjamin from the South Carolina Supreme Court is dated March 20, 1996. *See* Letter attached to Petition. [1]

> Except as provided below, a court reporter shall retain the primary and backup tapes of a proceeding for a period of at least five (5) years after the date of the proceeding, and the court reporter may reuse or destroy the tapes after the expiration of that period. If the proceeding was a hearing or trial which lasted for more than one day, the time shall be computed from the last day of the hearing or trial.  In any proceeding which has been transcribed, the court reporter shall retain the primary and backup tapes which have been transcribed for a period of at least thirty (30) days after the original transcript is sent to the requesting party, to allow any party to challenge the accuracy of the transcription.  If no challenge is received by the court reporter within the thirty (30) day period, the tapes may be reused or destroyed.

In its initial version, a three year retention period had been established.  Therefore by act of Court Rule, it appears that the trial transcript tapes would have been destroyable in 2001 (three years after 1998).  However, the delay has worked to the state's disadvantage because as the Petitioner knew at the time he filed his habeas petition, there was no record of the trial to defeat his assertion that his counsel told the judge at some point he would appeal.  In addition, the record reflected in his letters with counsel Battiste that as of January 2005, counsel was not able to locate the file and the Petitioner asserts in his pleading that he had not since been able to be provided any file from counsel.[16]  The State clearly is prejudiced by this delay on this claim. Even if the Petitioner asserts a claim in state PCR court, any future PCR action asserting this claim most certainly would be dismissed under laches by a state PCR court.  Thus, even if the Petitioner were to file a belated PCR action at the present time, the court nonetheless is led to the inexorable conclusion that the Petitioner failed to act with "reasonable diligence" in the matter, which would provide an alternate ground for dismissal.

Since Benjamin has not pursued any state PCR action, any available state court remedy would be barred by either Section 17-27-45(C), as well as by the equitable doctrine of laches if the statute of limitations is deemed inapplicable to the claim.

**Ground Three: Conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure.**
> **a.      The State failed to show that Petitioner was ever in actual or constructive possession of the alleged murder weapon.**

---

[16]      See Petition [1] at p. 5.

**b.     A constitutionally-infirm search and seizure was conducted by the police.**

**c.     Witness statements did not describe Petitioner nor was an out-of-court, non-photo line-up ever conducted.**

**d.     Hearsay testimony about an alleged gun sale was allowed into evidence without Petitioner being allowed to confront and cross-examine the alleged non-testifying witness.**

**e.     Counsel failed to move to suppress the in-court identification.**

In his third ground, Benjamin asserts that he was subject to an unreasonable search and seizure and also raises a series of claims (unrelated to the search) concerning failure to hold a line-up and concerns about the quality of the witnesses against him.  These grounds have never been raised in any direct appeal.  To the extent the issues could have been raised at all, depending on whether any proper objections were made at trial, the claims would have had to be raised in a direct appeal or they would be barred.  State post-conviction relief does not provide any remedy for trial error.  Post-conviction relief is not a substitute for an appeal.  *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517 (1993); *Simmons v. State*, 264 S.C. 417, 215 S.E.2d 883 (1974).  A post-conviction relief application cannot assert any issues that could have been raised **at trial** or **on appeal**.  *Ashley v. State*, 260 S.C. 436, 196 S.E.2d 501 (1973).  Absent any ability to assert the claim in a *White v. State* proceeding set out above in ground one and two, no other state remedies would be available.  For those reasons, Respondents submit any belated attempt at this issue would be rejected in a state PCR ground as a lack of subject matter jurisdiction to address the free standing constitutional claim under the PCR act.

**Ground Four:          The conviction was obtained by the action of an improperly empaneled Grand or Petit Jury.**

**"During 5/8/96 or thereafter, on television news it showed my picture and someone on my jury panel was impeached and if this is true and correct, I should have had a new trial and this violated my Due Process, Equal Protection.  The prosecution and my attorneys should have ordered a new**

**trial, rather, filed for a new trial. The trial judge should have ordered a new trial."**

**A member of the Petit jury was convicted of direct contempt of court for concealing knowledge of her relationship with the Petitioner and/or Petitioner's family and friends and for prematurely discussing the facts of the case prior to the onset of official deliberations.**

In his fourth ground for habeas relief, Benjamin contends that he learned in 1996 that a juror in his case was impeached and therefore should be a claim for a new trial. As mentioned above, the record reveals that juror Kennerly was held in contempt following the Benjamin's conviction based upon her undisclosed relationship with Benjamin and his sister, her statements about those relationship to others jurors, and her intent to never vote for the death penalty because of it. *See State v. Kennerly*.

Although Benjamin states that he learned about Kennerly in 1996 after he was convicted, he failed to file a timely application for post-conviction relief within one year. Any belated application at this time would be barred under Section 17-27-45(C) because he failed to seek relief in a timely manner.

## VII. STATUTORY TOLLING UNDER THE AEDPA

The AEDPA, which was passed on April 24, 1996, provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Petitioner's convictions became final on May 20, 1996. The one year period begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "The time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). While state collateral review tolls the one-year statute of limitations under § 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), it does not establish a right to file

within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325 (4th

Cir. 2000) (an inmate does not have one year from the conclusion of state court collateral

review; instead, the one year period for filing habeas petition commences upon conclusion of

direct review of conviction but is suspended while state PCR proceedings are pending in any

state court). Nor does the tolling period for state collateral review include the time for filing a

petition for certiorari in the United States Supreme Court following the denial of post-conviction

relief. *Crawley v. Catoe*, 257 F.3d 395, 399 (4th Cir. 2001) ("neither the time for filing a petition

for certiorari in the United States Supreme Court, nor the time a petition for certiorari is

considered by the United States Supreme Court, is tolled under 28 U.S.C. § 2244(d)(2) from the

one-year statute of limitations under § 2244(d)(1)"); *see also Carey v. Saffold*, 536 U.S. 214, 220

(2002) (application for state collateral review remains pending during the time to seek further

review in the state courts, "until the application has achieved final resolution through the State's

post-conviction procedures"[.]).

In the present case, it is clear that Petitioner did not timely file within the one-year

limitations period in § 2244(d)(1)(A). As mentioned above, Benjamin's state court convictions

became final ten days after May 8, 1996, since that was the last date on which he could serve a

notice of appeal to the South Carolina Supreme Court. *See* Rule 203(b)(2), SCACR   Thus his

convictions became final on May 20, 1999.[17] He thereafter had one year within which to file a

habeas petition. Benjamin's Petitioner should be dismissed because it was not timely filed.

As Respondents have noted, the petitioner cannot show that he was diligent in

determining that he did not have a direct appeal until 2005. Further, his pleadings are

contradictory when he asserts that it was only in 2005 that he realized that his counsel asserted in

open court that he would appeal. The Petitioner makes no effort to account for the time between

---

[17]       A review of a calendar for the year 1996 shows that May 8, 1996 was a Wednesday.

1996 until 2005. He has not addressed it and his burden of proof is lacking any credible showing on these initial claims concerning his right of appeal. This claim must be barred.

Accordingly, it is recommended that the claims made in Grounds One and Two be barred under the statute for lack of diligence. With respect to Ground Three, which sets forth a number of potential direct appeal issues, these claims had to be raised at trial and in a direct appeal for exhaustion, but were not, and thus are barred from consideration in this action under *Coleman v. Thompson*, *supra*. With respect to Ground Four, concerning juror Kennerly, Petitioner's lack of diligence is the most evident, because he admits he was aware of the impeachment of the juror in 1996, but did not take any steps to address it in federal court until 2006. He is procedurally barred from raising this claim under the federal statute of limitations. Alternately, his failure to pursue it in a state PCR action in a timely manner under Section 17-27-45 , within one year of learning about it bars federal habeas relief as a separate procedural bar. *Coleman*.

## VIII.  EQUITABLE TOLLING UNDER THE AEDPA

### A.  Petitioner's alleged status as a Mental Patient

In his motion for summary judgment [39], Benjamin alleges that his on-going status as a state mental patient (preceding his arrest, and apparently to the present time) is grounds to excuse the procedural default in state court[18] and allow equitable tolling of the AEDPA's time limitation.[19] The Supreme Court has assumed, without deciding, that Section 2244(d) allows for equitable tolling. *Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (2007) (*citing Pace v. DiGuglielmo*, 544 U.S. 408, 418, and n. 8, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). "Equitable tolling is appropriate when, but only when, extraordinary circumstances beyond the petitioner's control prevented him from complying with the statutory time limit." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (internal quotation marks omitted); *Hill v. Braxton*, 277 F.3d 701, 704

---

[18]     *See* Memorandum [39] at pp. 6-7.

[19]     The Respondents do not address the Petitioner's argument regarding his alleged mental illness.

(4th Cir. 2002) ("[T]he one-year limitation period is also subject to equitable tolling in 'those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation against the party.'") (*quoting Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).  To be entitled to equitable tolling, a petitioner bears the burden of showing: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing.  *Pace*, 544 U.S. at 418, 125 S.Ct. 1807.

In the present case, Benjamin has not shown that he has been pursuing his rights diligently, nor has he demonstrated that his mental problems constituted an "extraordinary circumstance" which would justify equitable tolling of the AEDPA.  At best, Benjamin has made a vague and unsubstantiated allegation of mental illness which was "in excess of thirteen years pre-dating his arrest and conviction since before 1994 to the present."[20]  He has not specified the nature of his mental illness,[21] the degree of his incapacity, or any evidence whatsoever of medications or treatment, which might lead the court even to entertain such an argument.  In *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003), the petitioner argued that his unspecified medical condition was an extraordinary circumstance beyond his control that caused him to file his habeas petition one day late.  However, Rouse provided no reason why his medical condition barred him from filing his habeas petition one day late, and upon review, the Fourth Circuit, sitting *en banc*, found that the district court did not abuse its discretion in denying equitable tolling on that basis.  *Rouse v. Lee*, 339 F.3d at 248.

In the present case, Benjamin does not contend that his mental condition has improved, or changed, to explain how he has become able to file this habeas petition; in fact, Benjamin

---

[20]   *See* Memorandum [39] at p. 6.

[21]   He states in his Petition that he was diagnosed as a "bipolar schizophrenic" but it is not clear when that diagnosis was made, or who made that diagnosis, and no medical records are attached.

states that "to this day [he] remains a mental patient under the medical care and supervision of the [SCDC]."[22]  A habeas petitioner who cannot establish a causal connection between his alleged lifelong mental incapacity and his ability to file a timely petition cannot be the beneficiary of equitable tolling.  *See Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11ᵗʰ Cir. 2005) (*affirmed*, 127 S.Ct. 1079 (2007), (*citing Bilbrey v. Douglas*, 124 Fed.Appx. 971, 973 (6th Cir. 2005) (finding that equitable tolling did not apply because petitioner "failed to establish a causal connection between her mental condition and her ability to file a timely petition"); *Green v. Hinsley*, 116 Fed.Appx. 749, 751 (7th Cir. 2004) (finding that equitable tolling did not apply because petitioner failed to submit evidence of how his low IQ would render him incompetent or prevent him from timely filing his petition); *Fisher v. Gibson*, 262 F.3d 1135, 1145 (10th Cir. 2001) (finding that petitioner's mere allegations of incompetency at the time of his guilty pleas did not suffice to warrant equitable tolling of the limitations period); *Collins v. Scurr*, 230 F.3d 1362 (8th Cir. 2000) (Table) (finding that bald and unsupported assertions that relate to an instance of alleged mental incompetency that occurred at a time remote to petitioner's habeas petition filing deadline did not equitably toll the statute of limitations); *Fisher v. Johnson*, 174 F.3d 710, 716 (5th Cir. 1999) (finding that equitable tolling did not apply when petitioner's brief period of incapacity "occurred at a time so remote to his deadline" and petitioner could not show that he diligently pursued his application the remainder of the one-year filing deadline); *cf. Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) (remanding case for further factual development on issue of whether petitioner's mental illness prevented him from timely filing his federal habeas petition as to warrant the application of equitable tolling); *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) (remanding case for further factual development where petitioner "presented evidence of ongoing, if not consecutive, periods of mental incompetency" because mental incompetence may constitute an extraordinary circumstance for purposes of tolling the statute of

---

[22]    *See* Memorandum [39] at p. 7.

limitations when a person's mental deficiency affects his ability to file a timely habeas petition), (*overruled in part, Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)).  In sum, Benjamin has not demonstrated that the failure to timely file was caused by extraordinary circumstances beyond his control.

### B.  Petitioner's Claim that the Law Library is not up-to-date

As an additional ground in his motion for summary judgment [39], the Petitioner appears to blame his untimely Petition on the "Respondents' failure to provide access to the courts in the form of up-to-date law books and legal reference materials."[23]  Petitioner argues that the newest copy of 28 U.S.C. §§ 2244 and 2254 is dated 1994:  "Therefore, Respondents have failed to provide Petitioner with access to changes in habeas law commencing with the enactment of the [AEDPA] of 1996, and Petitioner cannot be held liable for respondents' failure and inadequacies."[24]

To the extent that the Petitioner contends he is entitled to equitable tolling in this instance because of the alleged inadequacies of the law library at Evans, the lack of resources of the law library will not justify equitable relief.  The alleged inadequacy of the law library does not toll the statute of limitations.  *Samuels v. Cohen*, 2007 WL 1732118 at *7 (D.S.C. 2007)*; see also Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164, 121 S.Ct. 1124, 148 L.Ed.2d 991 (2001) (refusing to toll limitation where access to legal materials that would have given notice of the limitations period was delayed); *Felder v. Johnson*, 204 F.3d 168, 171-73 (5th Cir. 2000) (holding that absence of AEDPA from prison law library for several months did not justify equitable tolling); *see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.), *cert. denied*, 525 U.S. 891, 119 S.Ct. 210, 142 L.Ed.2d 173 (1998) (Mere allegations that the law library was inadequate do not toll the statute of limitations.); *see also Lewis v. Casey*, 518 U.S.

---

[23]     Petitioner's Memorandum [39] at p. 7.  The Respondents do not address the Petitioner's argument regarding this issue.

[24]     Petitioner's Memorandum [39] at p. 8.

343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (because inmates have no "freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by" challenging the adequacy of the prison's law library or legal assistance program.). *But see Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (*en banc*) (*per curiam*) (holding that there are circumstances in which an inadequate prison law library can constitute a state-created impediment, and remanding the case to the district court for further fact finding to determine if that case presented such a situation.).

Finally, to the extent that the Petitioner is claiming ignorance of the law, such ignorance likewise is insufficient to justify equitable relief from the procedural requirements of 28 U.S.C. § 2254. *See Samuels v. Cohen*, 2007 WL 1732118 at *7 (D.S.C. 2007), *citing Simmons v. State of South Carolina*, 2007 WL 954144 at *3 (D.S.C. 2007). As the Fourth Circuit recently held, in the context of equitable tolling of the statute of limitations, "[e]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *see also Harris v. Hutchinson*, 209 F.3d at 33-31) (unfamiliarity with the legal process, lack of representation, or illiteracy are not grounds for equitable tolling).

Having determined that there are no extraordinary circumstances which would entitle Benjamin to equitable tolling, it is recommended that Benjamin's habeas Petition be denied and dismissed as untimely under the AEDPA, and his motion for summary judgment be denied.

**RECOMMENDATION**

Based upon the foregoing, it is recommended that the Respondent's Motion for Summary Judgment **[29] should be granted** and Petitioner's Motion for Summary Judgment **[39] should be denied**.

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

September 20, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).